UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ___3/25/2026___

JOHN FRANCIS CALICCHIO AND VINCENT
COLABELLA, AS COTRUSTEES OF THE
THOMAS A. CALICCHIO 2010 TRUST UNDER
AGREEMENT DATED MAY 1, 2020,

              Plaintiffs,

-against-

LISA M. JACKSON, TATE JACKSON, AND
PHILLIP J. MICHAELS, AS THE EXECUTORS
OF THE ESTATE OF JOHN CALICCHIO,
DECEASED,

              Defendants.

24-CV-05101 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

In 2010, John Calicchio ("John Sr.") and Thomas A. Calicchio ("Thomas") set up a trust

to benefit Thomas' wife and descendants. From May 2010 until his death on December 11,

2021, John Sr. served as the trustee. While trustee, John. Sr. did not invest the trust's funds. He

also transferred approximately $3.7 million from the bank accounts associated with the trust. In

early 2024, Plaintiffs John Francis Calicchio ("John Francis") and Vincent Colabella (together,

"Plaintiffs") assumed the role of co-trustees. They allege that John Sr.'s failure to invest the

trust's funds and his withdrawals from the trust accounts breached his fiduciary duty as trustee.

Plaintiffs seek over $6 million in damages for this alleged breach. Defendants have moved to

dismiss Plaintiffs' claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons

set forth below, Defendants' motion to dismiss is GRANTED.

1

## BACKGROUND

### I.    RELEVANT FACTS[1]

John Sr. and Thomas entered into a trust agreement (the "Trust Agreement") on May 1, 2010 to set up trust titled "The Thomas A. Calicchio 2010 Trust" (the "Trust"), with Thomas as grantor of the Trust and John Sr. as sole trustee.  Dkt. No. 1-1 at 2.  The Trust Agreement authorized the trustee to distribute the Trust's principal and income to the following three entities: (1) Thomas' wife; (2) his descendants; and (3) "any charitable organizations added to the class of beneficiaries by the Selector."[2]  Compl. ¶ 13.  In addition, the Trust Agreement endowed the trustee with various administrative powers, including the ability to make loans and retain property.  Dkt. No. 1-1 at 25–26.

The Trust had at least two different bank accounts: one at First Republic Bank and one at Citi Bank.  Compl. ¶¶ 26, 27.  During his tenure as Trustee, John. Sr. transferred funds in and out of the Trust's accounts on numerous occasions.  Id. ¶ 25.  Between 2016 and 2021, John Sr. transferred $2,270,000 into the First Republic Bank account and transferred over $2,072,000 out.  Id. ¶ 26.  During that same period, John Sr. transferred approximately $5,527,800 into the Citi Bank account and transferred over $3,630,000 out.  Id. ¶ 27.  Plaintiffs allege that these transfers were made "for the benefit of third parties or individuals that were not beneficiaries of the Trust, and/or without informing the beneficiaries."  Id. ¶ 25.  Additionally, while John. Sr. served as trustee, the Trust's principal did not grow in value.  Id. ¶ 38.  Plaintiffs attribute this lack of growth to the fact that John Sr. did not "prudently invest[] in a portfolio of securities, including

---

[1] The following facts are taken from the allegations in the Complaint ("Compl."), Dkt. No. 1, and are assumed true for the purpose of resolving this motion.

[2] During the relevant time period, Plaintiff John Francis and non-party Amanda Calicchio were Thomas' descendants.  Compl. ¶ 14.

stocks and fixed income." *Id.* ¶ 29. They allege that, had he done so, the portfolio would have a present-day value of over $6,000,000. *Id.*

John Sr. died on December 11, 2021. *Id.* ¶ 17. Following his death, and pursuant to the Trust Agreement, Norman Rosner briefly served as trustee. *Id.* ¶ 18. Thomas replaced him as trustee and appointed Ann Lackowitz to serve in the role on January 13, 2022. *Id.* On January 16, 2024, Thomas removed Ms. Lackowitz and appointed Plaintiff Vincent Colabella as Trustee. *Id.* ¶ 19. On February 1, 2024, Mr. Colabella appointed John Francis (Thomas' descendant) as Co-Trustee. *Id.* ¶ 20.

Plaintiffs bring this case in their capacity as co-trustees against Lisa M. Jackson, Tate Jackson, and Philip J. Michaels (together "Defendants") in their capacity as executors of John Sr.'s estate. Plaintiffs allege that John Sr. negligently breached his fiduciary duty as trustee by "failing to hold and properly invest the Funds, administer the Trust for the purpose and sole use of the beneficiaries, and keep the beneficiaries informed of the Trust's accountings." *Id.* ¶ 37. They seek to hold liable John Sr.'s estate for this allegedly unlawful conduct and obtain damages incurred as a result. *Id.* ¶ 41.

## II.    PROCEDURAL HISTORY

Plaintiffs initiated this action on July 3, 2024. Dkt. No. 1. On September 26, 2024, Defendants moved to dismiss the Complaint for failure to state a claim. Dkt. No. 18 ("Mot."). On October 8, 2024, the Court stayed discovery pending resolution of Defendants' motion to dismiss, Dkt. No. 21, and the motion is now fully briefed, Dkt. Nos. 22 ("Opp."), 23 ("Rep.").

## DISCUSSION

### I.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").  However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

On a Rule 12(b)(6) motion, a court "may review only a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  That universe includes "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).  Here, the Court may consider the Trust Agreement and bank statements attached as

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

Exhibits 1 through 6 to the Complaint, because they are incorporated by reference in and integral to the Complaint.  *See* Dkt. Nos. 1-1 to 1-6.

## II.    PLAINTIFFS' CLAIM IS TIME-BARRED

### A. Florida Law Applies to Plaintiffs' Claim

Defendants claim that Florida law applies to the parties' dispute and that, under Florida law, Plaintiffs' claim is time-barred.  Plaintiffs disagree, arguing that New York law governs the limitations period because "this action is for a claim involving a New York decedent whose executors (Defendants) have been appointed by a New York Surrogate's Court."  Opp. at 5.  The Court agrees with Defendants, but on different grounds.[4]

First, the fact that Defendants are executors appointed by a New York Surrogate's Court is of no significance at all to this question, because there is no suggestion that Defendants or John Sr.'s estate participated in any way in the events underlying the claim for breach of fiduciary duty in this case.  Defendants are merely nominees, appearing as administrators of John Sr.'s estate, which itself is merely the financially responsible party for any obligation arising out of the alleged wrongs committed by John Sr. as a natural person while he was alive.  Accordingly, the function of appointing representatives for that estate has no bearing on the choice-of-law analysis.

Second, the Trust Agreement's choice-of-law clause is likely not determinative of the law that applies to this case.  Defendants argue that Florida law applies because the Trust Agreement contains a Florida choice-of-law clause.  Rep. at 2.  However, breach of fiduciary duty—

---

[4] There is an actual conflict of laws between New York and Florida law that would "affect the outcome of the case significantly" and that the Court must resolve because, as explained *infra*, the application of Florida's statute of repose to this case would bar Plaintiffs' claims in their entirety.  *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 199 (S.D.N.Y. 2015).

Plaintiffs' sole claim in this case—is a claim sounding in tort. *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03-CV-01537 (MBM), 2003 WL 23018888, at *15 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004) ("Breach of fiduciary duty is a tort claim . . . .") (citing *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316 (1995)). Under New York law, a choice-of-law clause does not automatically extend to tort claims.[5] Rather, "in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be sufficiently broad as to encompass the entire relationship between the contracting parties." *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996).

In *Krock*, the Second Circuit applied this principle to a mortgage agreement's choice-of-law clause that stated: "this Mortgage shall be governed by and construed in accordance with the laws of [Massachusetts]." *Id.* at 643. The Circuit found this language insufficient to reach a tort claim that arose incident to the agreement. *Id.* at 645. The Trust Agreement's choice-of-law provision contains substantially similar language to that analyzed in *Krock*. The choice-of-law provision states: "[t]his instrument and each trust created by this instrument shall be construed and governed in all respects by and in accordance with the law of the state of Florida." Dkt. No. 1-1 at 36. Under Second Circuit precedent, this clause is likely insufficiently broad to reach Plaintiffs' breach of fiduciary duty claim. *See also, Koury v. Xcellence, Inc.*, 649 F. Supp. 2d 127, 135 (S.D.N.Y. 2009) (Even where a contract contains a choice-of-law provision, "[i]n New York, claims for breach of fiduciary duty are analyzed under choice of law principles applicable to torts.").

---

[5] A federal court sitting in diversity must apply the conflicts-of-law principles of the forum state to resolve choice-of-law issues. *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012).

Although the choice-of-law clause may not conclusively resolve Plaintiffs' claim, Florida law still applies to this claim in this case. Where a claim sounds in tort, "New York courts apply an 'interests analysis,' under which the law of the jurisdiction having the greatest interest in the litigation is applied." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). In determining which jurisdiction has the greatest interest in the litigation, courts consider, among other things, "[t]he contacts of the parties and occurrences with each jurisdiction . . . together with the policies underlying each jurisdiction's rules, the strength of the governmental interests embodied in these policies, and the extent to which these interests are implicated by the contacts." *Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir. 2005).

The information contained in the Trust Agreement, combined with Plaintiffs' pleadings, together suggest that Florida has the greater interest in this litigation even though the Agreement does not conclusively establish the locus of the alleged tort or the domicile of the Trusts' beneficiaries. Plaintiffs describe John Sr. as a "New York decedent," Opp. at 5, but they do not allege, and the Trust Agreement does not reveal, where he resided at the time of the alleged tortious transactions. Although the bank statements attached to the Complaint indicate they were mailed to a residential address in Manhattan, they do not indicate where the deposits were made. Additionally, most of the debits were either checks or wire transfers and the face of the checks for the trust account does not indicate an address. *See* Dkt. No. 1-1–1-6. The Trust Agreement shows that Thomas, the grantor, was a Florida resident at the time the Trust was created, *see* Dkt. No. 1-1 at 1, but also does not indicate the residence of John Sr. as trustee. As noted above and discussed further below, the Trust itself is a creature of Florida law, and Florida clearly has an interest in ensuring that trusts formed under ots laws are administered in accordance with those

7

laws. Compl. ¶¶ 35–36. To that end, the fiduciary duties John Sr. is alleged to have breached all arise under Florida law. *Id.*

Moreover, in cases like this one, the choice-of-law analysis places great weight on "where the [injured] party resides and sustained an economic loss resulting from the tort." *Burns v. Del. Charter Guarantee & Tr. Co.*, 805 F. Supp. 2d 12, 22 (S.D.N.Y. 2011) (quoting *Bon Jour Group, Ltd. v. Elan–Polo, Inc.*, No. 96-CV-06705, 1997 WL 401814, at *4 (S.D.N.Y. July 16, 1997)); *see also In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311 (S.D.N.Y. 2004); *Grund v. Del. Charter Guarantee & Tr. Co.*, 788 F. Supp. 2d 226, 244 (S.D.N.Y. 2011). Here, the injured parties are the beneficiaries of the Trust, who the Trust Agreement identifies as "the Grantor's wife and the Grantor's descendants living from time to time during the trust term." Dkt. No. 1-1 at 10. During the relevant period, the Grantor's wife was Carol Calicchio, and the Grantor's descendants were John Francis and Amanda Calicchio. Compl. ¶ 14. Although one may presume that Carol Calicchio resided with her husband in Florida, of these beneficiaries, the Complaint identifies only the residence of John Francis, who also resides in Florida. *Id.* ¶ 1. Taking all of these factors into account, under New York choice of law principles, Florida clearly has the greater interest in this litigation, and Florida law applies to Plaintiffs' claims.

### B. Plaintiffs' Claim is Time-Barred Under Florida Law

Florida law bars claims against an individual or their estate brought more than two years after an individual's death. *See* Fla. Stat. Ann. § 733.710 ("§ 733.710" or "Section 733.710") ("2 years after the death of a person, neither the decedent's estate, the personal representative, if any, nor the beneficiaries shall be liable for any claim or cause of action against the decedent . . ."). New York courts have deemed this statute a statute of nonclaim or repose, which is "considered a substantive law" for purposes of New York choice-of-law analysis. *Astoria Fed. Mortg. Corp.*

8

*v. Pellicane*, 913 N.Y.S.2d 228 (2d Dep't 2010); *Matter of Cassini*, 120 N.Y.S.3d 138 (2d Dep't 2020); *but see Barnett v. Johnson*, 839 F. Supp. 236, 239 (S.D.N.Y. 1993) (New York's "borrowing statute" could apply to statutes of repose as well as limitations).  Under New York choice-of-law principles, "[s]tatutes of repose are theoretically and functionally distinct from typical time limitations" and can apply to claims brought in New York.  *Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48, 55 (1999); *Astoria Fed. Mortg. Corp.*, 913 N.Y.S.2d at 229 (affirming lower court's determination that § 733.710 applied to a claim governed by Florida law).  Because Florida law applies to this case, and Section 733.710 is a substantive Florida law for purposes of choice-of-law analysis, Section 733.710 applies to Plaintiffs' claim.[6]

Plaintiffs' claim is clearly time-barred under Section 733.710.  John Sr. died on December 11, 2021.  Dkt. No. 1 ¶ 17.  Plaintiffs initiated this action on July 3, 2024, *id.*, more than two years after John Sr.'s death.  Plaintiffs allege that John Sr. breached his fiduciary duties and seek to hold John Sr.'s estate "liable for damages incurred as a result of [John Sr.'s]

---

[6] Even if Florida's time limitations on claims against a decedent or their estate were viewed as a statute of limitation rather than repose, Florida law would still apply.  Under New York choice of law rules, matters of procedure are governed by the law of the forum; accordingly, in an action pending in New York, the procedural law of New York applies, regardless of what substantive law governs the merits of the case.  *See Davis v. Scottish Re Group Ltd.*, 30 N.Y.3d 247, 252 (2017).  New York law treats limitations periods as procedural and has an explicit "borrowing statute," under which an action that accrues outside of New York and is brought on behalf of a non-resident of New York is governed by the shorter of the limitations period that would apply under New York law or the law of the state where the claim accrued.  N.Y.C.P.L.R. § 202; *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999).  Here, the Plaintiffs are nominees acting on behalf of the true beneficiary plaintiffs, the known residences of whom are Florida.  For purposes of claim accrual in the context of New York's borrowing statute, New York law does not apply the "interests test" discussed above, but rather looks to "the time when, and the place where, the plaintiff first had the right to bring the cause of action."  *Id*.  For tort claims or other claims where economic injury is alleged, the plaintiff's claim accrues in the jurisdiction where the plaintiff was physically located at the time of injury, or where the plaintiff resided and thus sustained the economic impact of the loss.  *Id*. at 529; *see also National Auditing Servs. & Consulting, LLC v. Assa*, 191 N.Y.S.3d 373 (1st Dep't 2023); *Centre Lane Partners, LLC v. Skadden, Arps, Slate, Meagher & Flom*, 62 N.Y.S.3d 341 (1st Dep't 2017).  Here, as discussed above, the Trust itself was a creature of Florida law and the only identified residence of the beneficiaries who suffered the alleged economic injuries is Florida.  Accordingly, New York's borrowing statute also requires that Florida's statute of limitations (which is shorter than New York's) apply to the claims in this case.

conduct." *Id.* ¶¶ 39–41.  This claim is barred under Section 733.710 because a "decedent's estate" cannot be held "liable for any claim or cause of action against the decedent" brought more than two years after the decedent's death.

Plaintiffs argue that this statute does not apply to their claim because Section 733.710 only "deals with claims against [a] decedent's estate that have been subject to probate proceedings in the State of Florida."  Opp. at 3.  The Second Department's holding in *Astoria Federal Mortgage Corp. v. Pellicane* forecloses that argument.  *Astoria* concerned a claim against the estate of an individual who had entered into a construction loan.  The trial court granted summary judgment in the estate's favor, finding that Section 733.710 barred the plaintiff's claim because it was not commenced within two years of the decedent's death. *Astoria Fed. Mortg. Corp. v. Pellicane*, No. 08-34351, 2009 WL 10662528, at *4 (N.Y. Sup. Ct. Aug. 10, 2009).  On appeal, the plaintiff argued that "Florida probate law is of no import in these proceedings" because "[t]he Estate was probated in New York and is thus within the jurisdiction of the New York courts and subject to the application of New York law."  Brief for Appellant, *Astoria Fed. Mortg. Corp. v. Pellicane*, 78 A.D.3d 622 (2010) 2010 WL 9102741, at *16.  The Second Department found that argument unavailing.  It held that the trial court properly determined that Florida law applied and that Section 733.710 applied to and barred the plaintiff's claim against the Defendant estate.  *Astoria Fed. Mortg. Corp*, 913 N.Y.S.2d at 228-29. Accordingly, Plaintiffs' argument that being subject to probate proceedings in the State of Florida is a necessary precursor to the application of Section 733.710 is not viable under New York's choice of law rules.

## III.   PLAINTIFFS' CLAIM FAILS ON THE MERITS

Even if Section 733.710 does not bar Plaintiffs' claim, it still must be dismissed for

failure to state a claim on which relief can be granted.  Plaintiffs bring a single claim for breach of fiduciary duty.  Dkt. No. 1 at 7.  Under Florida law, "[t]he elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).[7] Plaintiffs claim that John Sr. breached his fiduciary duty through his failure to invest the trust assets and his unexplained withdrawals from the trust.

Plaintiffs' claim for breach of fiduciary duty fails because the Complaint does not identify any fiduciary duties that John Sr. breached.  Plaintiffs allege that John Sr.'s duties arose from three Florida statutes: Section 736.0801, Section 736.0804, and Section 518.11.  Dkt. No. 1 ¶¶ 35–36.  Each of these statutes expressly requires fiduciaries to administer a trust in accordance with its terms and purpose, and in the best interest of the beneficiaries.  *See, e.g.*, Fla. Stat. Ann. § 736.0801 ("the trustee shall administer the trust in good faith, *in accordance with its terms and purposes* and the interests of the beneficiaries, and in accordance with this code.") (emphasis added); *Id.* § 736.0804 ("A trustee shall administer the trust as a prudent person would, by considering the purposes, [and] terms . . . of the trust.").  Even Section 518.11, which requires a fiduciary to "invest and manage investment assets" expressly provides that its provisions "may be expanded, restricted, eliminated, or otherwise altered by express provisions of the governing instrument," including provisions that do not specifically refer to the statute.  *Id.* § 518.11.  Furthermore, the statute protects a fiduciary from liability for actions taken by the

---

[7] Although the parties disagree on whether Florida or New York law governs Plaintiffs' ability to bring this case, all parties apply Florida substantive law to Plaintiff's claim for breach of fiduciary duty. *See, e.g.*, Mot. at 6; Opp. at 6–7.  Where the parties' briefs assume that a particular state's law controls the dispute "such implied consent is sufficient to establish choice of law." *Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 296 (2d Cir. 2000).

fiduciary in "reasonable reliance on those express provisions" of an instrument that may alter the requirements set forth in Section 518.11.  Accordingly, to make a claim for breach of fiduciary duty, Plaintiffs would need to allege a breach of the duties set forth in the Trust Agreement or conduct that was not in the beneficiaries' best interest.  Here, Plaintiffs do not allege a breach of the duties required under the Trust Agreement nor do they allege, in anything other than the most conclusory fashion, that John Sr. took actions that were not in the best interest of the Trust's beneficiaries.  Plaintiffs allege that John Sr. breached his fiduciary duty by failing to invest the trust assets and making "unaccounted withdrawals absent justification." Dkt. No. 22 at 8.  Neither of these actions can form the basis of a breach of fiduciary duty claim.

First, the Trust Agreement does not expressly require the trustee to invest the Trust's funds.  The Trust Agreement states: "The Trustees *may* invest all or any part of the Trust Principal and the income of such trust in such a manner as they may determine, whether or not such investments produce income during the Grantor's lifetime." Dkt. No. 1-1 at 2 (emphasis added).  Pursuant to the plain text of this provision, the decision to invest or not invest is entirely at the discretion of the Trustee. *See, e.g.*, *Leghorn v. Wieland*, 289 So. 2d 745, 747 (Fla. Dist. Ct. App. 1974) ("The Florida courts have held . . . that when given its ordinary meaning, the word 'may' denotes a permissive term rather than the mandatory connotation of the word 'shall.'"); *see also Bacon v. Marden*, 518 So. 2d 925, 926 (Fla. Dist. Ct. App. 1987) (holding that a Trust Agreement provision stating that "[t]he trustees shall have no obligation to produce income" superseded "the trustees' duty to produce income for the income beneficiary" under a now-repealed Florida law).  Accordingly, John Sr.'s decision not to invest the Trust's funds in a portfolio of securities did not breach an express requirement of the Trust.

Second, there is no indication in the Complaint that John Sr.'s decisions concerning the Trust's funds were not made in the best interest of the Trust's beneficiaries nor that they went against the purpose of the Trust. Section 518.11(c) provides that a fiduciary "has a duty to diversify the investments unless, under the circumstances, the fiduciary believes reasonably it is in the interests of the beneficiaries and furthers the purposes of the trust, guardianship, or estate not to diversify." Put differently, the fiduciary is not required to diversify investments if the fiduciary believes that such a course of conduct is either in the interest of the beneficiaries or in accordance with the purpose of the trust. Here, Plaintiffs have not alleged that John Sr. was acting outside of the best interest of the beneficiaries or that he was not seeking to advance the purpose of the trust when he chose not to invest the Trust's assets. Plaintiffs only offer the allegation that "the portfolio would have a value exceeding $6,000,000" if John Sr. had "prudently invested in a portfolio of securities, including stocks and fixed income," Compl. ¶ 29. But Section 518.11 makes clear that assessing whether a fiduciary has complied with its requirements "is a test of conduct and not of resulting performance." Fla. Stat. Ann. § 518.11(b); *see also Parker v. Shullman*, 983 So. 2d 643, 647 (Fla. Dist. Ct. App. 2008) ("[S]ection 518.11 provides that the fiduciary's decisions are to be judged under the facts and circumstances at the time of the decision or action, and that the test is one of conduct rather than resulting performance."). And Plaintiffs have not alleged any specific conduct that John Sr. took that was not in the best interest of the beneficiaries nor any conduct that did not advance the purpose of the Trust.

Furthermore, Plaintiffs have not identified, nor is the Court aware of, any case law holding that Section 518.11 requires a fiduciary to invest in a portfolio of securities. In fact, in a case before an Illinois appellate court, the court applied Florida law to find that a fiduciary did

13

not breach his duty by holding a trust's funds in cash for several years. *See In re Ests. of Restaino*, 2017 IL App (2d) 160947-U, 2017 WL 4844297 at *8, 11 (October 24, 2017). The court noted that the Plaintiff "cite[d] no authority for his claim that trustees are not allowed to keep assets sitting as cash" and found that, under the circumstances of the trust, the trustee's decision not to invest the assets comported with Section 518.11. Here too, Plaintiffs have provided no basis for alleging that the decision not to invest was made against the interest of the beneficiaries. There could be many reasons why a trustee might prudently decide not to keep a trust's liquid assets in securities. Plaintiffs have made no allegation that can support their bare assertion that the decision not to invest in a portfolio of securities was against the interests of the Trust's beneficiaries under the relevant test.

Third, Plaintiffs' claim based on John Sr.'s alleged unaccounted-for withdrawals also fails to set forth a duty pursuant to the Trust Agreement that John Sr. breached. As Defendants note, *see* Mot. at 8, the Trust Agreement allows the trustee to make payments for a variety of reasons. For example, the trustee can withdraw funds to "lend any assets to any person or entity" or to "retain, acquire, commence, continue or permit the continuation of any business." Dkt. No. 1-1 at 26–27. Plaintiffs do not allege that the withdrawals discussed in the Complaint were made for a purpose that is not authorized under the Trust Agreement. Instead, Plaintiffs state that they have "yet to ascertain the basis for the withdrawals enumerated in the Complaint" but "it is plausible that these withdrawals were made for self-serving purposes." Opp at 8. This allegation raises only "a sheer possibility that a defendant has acted unlawfully" and thus cannot withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678 (2009). Because Plaintiffs have not alleged any fiduciary duties that John Sr. breached, their claim for breach of fiduciary duty fails under Florida law and must be dismissed.

14

Finally, it is worth noting that the Trust Agreement expressly addresses the liability of the Trustee.  It provides that "[n]o Trustee shall be liable for making or not making any election permitted by law."  Dkt. No. 1-1 at 23.  The Agreement also sets forth a presumption that "[e]ach Trustee shall be deemed to have acted within the scope of his authority, to have exercised reasonable care, and to have acted prudently, diligently and impartially as to all interested persons, unless the contrary is proven by affirmative evidence."  *Id.*  Here, Plaintiffs have not alleged any "affirmative evidence" that would set forth the basis for establishing John Sr.'s liability or, if credited, rebut this presumption.  Absent such evidence, or even supported allegation, there is no basis for an assertion of liability against John Sr. under the plain terms of the Trust Agreement.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate Dkt. No. 18 and CLOSE this case.

Dated: March 25, 2026
      New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

15